**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA

v.                                   No.  4:04CR00268 JLH

CLINTON BELL

**OPINION AND ORDER**

This case involves a traffic stop that resulted in the arrest of Clinton Bell.  Bell has filed a motion to suppress.  On October 28, 2005, the Court held an evidentiary hearing on the motion to suppress.  For the following reasons, the motion to suppress is denied.

**I.**

The events that led to the stopping of Bell originated from the July 29, 2005, burglary of Fort Thompson Sporting Goods.  During the early morning hours that day, 77 handguns and three assault rifles were stolen from Fort Thompson's.  Because of the nature of the goods stolen, the North Little Rock Police Department gave the investigation of the burglary a high priority and deployed a large portion of the department's detectives.  Around 3:00PM that day, Detective Cox, a police officer with fifteen years of experience, received a call from a patrol officer that an individual had information on the burglary.  Cox met with that person.  The informant had never previously provided information to the North Little Rock police but was familiar with details of the burglary that were not yet public knowledge.  Cox obtained the name, phone numbers, and contact information of the informant.  The informant reported observing brand-new guns with price tags still on them being sold from apartment 31 at Hemlock Courts, a housing development in North Little Rock.  The informant reported seeing guns on the trunk and hood of a newer-model white Honda.

Detective Carmical was sent in an unmarked car to investigate. Driving through Hemlock Courts, he observed only one white Honda in the area and that vehicle was parked in a lot near apartment 31. Shortly after Carmical began surveillance, a man and a woman entered the white Honda and drove out of the lot. Carmical called his supervisor who instructed him to follow the white Honda and stop it to search for guns. Carmical then contacted dispatch and asked for a patrol officer to stop the white Honda. Officer Miller responded to Carmical's call, and he was advised that the white Honda was linked to the burglary and might contain firearms. Because of the possible weapons in the white Honda, Miller was told to treat the traffic stop as a felony stop. The practice of North Little Rock police officers in a felony stop was to secure the vehicle's occupants with handcuffs. Accordingly, after stopping the white Honda, Miller and the other officers responding approached the vehicle with weapons drawn. Miller shouted at the white Honda's occupants to get out of the vehicle. The driver, Clinton Bell, turned and reached back to the white Honda's console before getting out. The officers quickly handcuffed Bell and Deandra Baker, the white Honda's other occupant, before examining the vehicle. On his initial look into the white Honda, Miller spotted clumps of white powder scattered across the floor mat. Miller then reached into the vehicle and pulled out a baggie of crack-cocaine from the console near where Bell had reached. Based on his observation of drugs, Miller arrested both of the white Honda's occupants and took them to the police department.

At the police department, Cox read Bell his *Miranda* rights. Bell waived his rights and agreed to make a statement. Bell admitted in his statement that he had one of the firearms stolen from Fort Thompson Sporting Goods. After giving his statement, Bell took officers to retrieve the gun from his apartment. The gun was confirmed to be one of the guns stolen earlier that morning. Bell now argues that both his statement and the gun should be suppressed.

## II.

Bell first argues that his statement and the firearm he retrieved for the police should be suppressed because the police lacked reasonable suspicion to stop his vehicle under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Constitution guarantees the right to be free against unreasonable searches and seizures. U.S. Const. amend. IV. "The Fourth Amendment permits police to make an investigative stop of a vehicle if they have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002) (quotation omitted). "Reasonable suspicion requires a particularized and objective basis for suspecting legal wrongdoing." *United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir. 2004). Whether the particular facts known to the police amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances. *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005). Reasonable suspicion may be based on an informant's tip provided that the tip is reliable and the informant's information is corroborated. *See Jacobson*, 391 F.3d at 906; *United States v. Johnson*, 64 F.3d 1120, 1125 (8th Cir. 1995).

In this case, the North Little Rock police had reasonable suspicion to stop Bell's vehicle based on the informant's tip. The informant had observed some of the stolen guns at apartment 31 in Hemlock Courts and in or on a newer-model white Honda parked in front of that address. While this informant had not previously provided police officers with information, the informant was familiar with many details of the burglary that were not yet public knowledge. The informant was not anonymous. The informant met with Cox in person. Cox obtained the informant's name and contact information. Cox had the opportunity to assess the informant's credibility, which increases the information's reliability. *United States v. Carpenter*, 422 F.3d 738, 744 (8th Cir. 2005). The

informant told police that the stolen guns were being sold from a specific address and a white Honda parked outside that address. When Detective Carmical investigated the tip, he found a white Honda—the only white Honda he noticed at that housing development—parked in front of the address given by the informant. This corroborated what the informant told Cox and further augmented the reliability of the tip. *See id.* Thus, when Bell and Baker entered the white Honda and started to drive away shortly after Carmical began surveillance, Carmical had reasonable suspicion to believe that the vehicle might be carrying some of the stolen weapons. *Cf. Spotts*, 275 F.3d at 721-22; *Johnson*, 64 F.3d at 1125. Although Patrol Officer Miller, and not Carmical, made the stop, Miller acted upon Carmical's request and therefore did not need to know the specific facts that validated the stop. *See Jacobsen*, 391 F.3d at 907.

     Bell also argues that even if the stop was valid at its initiation, the conduct by the police officers during the stop exceeded legitimate bounds, making his arrest illegal and rendering both his statement and his firearm inadmissible as the fruits of the illegal arrest. "The scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983). "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005). Furthermore, the police must employ the least intrusive means reasonably available to dispel the officers' suspicion. *United States v. Doffin*, 791 F.2d 118, 120 (8th Cir. 1986). "An investigative detention may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force." *Sanchez*, 417 F.3d at 975. However, officers may check for weapons and take any steps "reasonably necessary to protect their personal safety." *United States v. Rowland*, 341 F.3d 774, 783 (8th Cir. 2003).

The officers here did not use unreasonable force given the perceived threat to their safety. As discussed above, the officers had reason to believe that Bell's vehicle might contain some of the stolen handguns and assault rifles from Fort Thompson. The officers' approach with weapons drawn and their handcuffing of the vehicle's occupants did not amount to unreasonable force considering the danger that those in the vehicle might have access to firearms. *Cf. United States v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999) (drawing firearms and handcuffing vehicle's occupants were reasonable precautions where officers suspected that there might be weapons in the vehicle); *Doffin*, 791 F.2d at 120. Bell's suspicious movement back towards the vehicle's console further counseled for caution on the part of the officers, as Bell appeared to be reaching for a weapon. Concerning the length of Bell's detention, Bell was only detained for a few minutes before he was arrested. After Miller finished handcuffing Bell and Baker, he looked into the white Honda and saw the clumps of white powder on the floor mat in plain view. Miller then reached into the car and grabbed a baggie of crack-cocaine from the console. At that point, Miller had probable cause to arrest Bell for the drugs and his arrest of Bell was therefore valid. *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990). Thus, Bell's statements at the police department and the firearm he retrieved for the police will not be suppressed.

## CONCLUSION

For the reasons stated, Bell's motion to suppress is DENIED.

IT IS SO ORDERED this 29th day of November, 2005.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE